**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                          CASE NO. 3:22-cr-141-TJC-PDB

SCOTT ANDREW HOLLINGTON

---

# O R D E R

This criminal case is scheduled for trial beginning July 17, 2023. (Doc. 122). The Court previously made several pretrial rulings. (See e.g., Docs. 65; 78; 90). Multiple motions remain pending. (Docs. 61; 87; 88; 93; 118; 123; 125; 143; 147). The Court now addresses each in turn.

## I.     BACKGROUND

This criminal action commenced on October 27, 2022. (Doc. 1). Later, on March 23, 2023, the grand jury returned a twenty-count superseding indictment charging Hollington with multiple crimes related to the unlawful distribution of controlled substances. (Doc. 68). In essence, the Government alleges that beginning around June 2021, and continuing through around July 2022, Hollington conspired to and unlawfully distributed controlled substances to patients at the mental health and drug treatment clinic, Sawgrass Health, LLC, which Hollington owned and worked at as a primary physician. Id. at 1–5. Specifically, he purportedly prescribed drugs that had no legitimate medical purpose in the usual course of professional practice. Id. at 5–10. The

Government also brings several charges for obstruction of justice, alleging that Hollington obstructed the administration of justice in this criminal case, "by making additions and alterations to the medical files and records" of certain "patients" identified in the superseding indictment. Id. at 10–11.

## II.    MOTIONS CHALLENGING THE SUPERSEDING INDICTMENT

Hollington filed motions directed towards the sufficiency of the superseding indictment. (Docs. 88; 123; 125). The Government responded (Docs. 111; 136; 138) and Hollington replied (Docs. 141; 142). Before these motions, Hollington sought dismissal of other portions of the indictment to no avail. (See Doc. 65). These attempts fare similarly with one exception.

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." The Eleventh Circuit articulates a three-part test to determine the sufficiency of an indictment:

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

United States v. Steele, 178 F.3d 1230, 1233–34 (11th Cir. 1999) (citation and internal quotation marks omitted). An indictment is generally sufficient if it "set[s] forth the offense in the words of the statute." Hamling v. United States,

418 U.S. 87, 117 (1974); United States v. Adkinson, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) (noting that an indictment "need do little more than track the language of the statute"). Indeed, an indictment that tracks the language of the statute is sufficient "as long as the language sets forth the essential elements of the crime." United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir. 1983).

However, an indictment is defective if it fails to adequately apprise the defendant of the charged offense. United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006). Thus, if an indictment tracks the language of the criminal statute, it must include enough facts and circumstances to inform the defendant of the specific offense being charged. United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003). This is necessary "not only to give the defendant notice as guaranteed by the [S]ixth [A]mendment, but also to inform the court of the facts alleged to enable it to determine whether the facts are sufficient in law to support a conviction." See Belt v. United States, 868 F.2d 1208, 1211 (11th Cir. 1989). An indictment does not, however, have to "allege in detail the factual proof that will be relied upon to support the charges." United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978).

Thus, in ruling on a motion to dismiss attacking the sufficiency of the indictment, a district case may review only the "face of the indictment and, more specifically, the language used to charge the crimes. It is well-settled that a court may not dismiss an indictment . . . on a determination of facts that should

have been developed at trial." <u>Sharpe</u>, 438 F.3d at 1263 (internal citation and quotation marks omitted). Even within this limitation though, "[i]t is perfectly proper, and in fact mandated, that [a] district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." <u>United States v. Coia</u>, 719 F.2d 1120, 1123 (11th Cir. 1983).

### a. Hollington's Motion to Dismiss Counts 16–20 (Doc. 88)

Hollington challenges the sufficiency of Counts 16–20 in the superseding indictment, which charge him with obstruction of justice for allegedly making additions and alterations to certain medical files and records. (<u>See</u> Docs. 68; 88). Hollington contends the Counts should be dismissed because the "medical files and records" that Hollington allegedly altered were produced by the defense, not the Government. (Doc. 88 ¶ 2). Further, the Government's theory for the obstruction counts rests on Hollington altering the records of "fake patients"— in other words, undercover agents who posed as patients to receive medical treatment from Hollington, which is not stated in the superseding indictment. <u>Id.</u> ¶¶ 4, 7, 20. The issue is whether these two factual contentions raised by Hollington—that the defense produced the medical records and that such records concerned "fake patients"—render Counts 16–20 dismissible.

Section 1503(a) of the United States Code defines obstruction of justice as: "[w]hoever . . . corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence,

4

obstruct, or impede, the due administration of justice . . . ." 18 U.S.C. § 1503(a). This "omnibus clause is essentially a catch-all provision which generally prohibits conduct that interferes with the due administration of justice." United States v. Brenson, 104 F.3d 1267, 1274 (11th Cir. 1997) (citation omitted). Counts 16–20 allege that Hollington "did corruptly influence, obstruct and impede and endeavor to influence, obstruct and impede the due administration of justice in [this case] by making additions and alterations to the medical files and records of the patients identified in the counts below[.]" (Doc. 68 at 10).

For the purpose of a motion to dismiss, the Court takes as true the allegations that Hollington added to and altered the medical files and records of the individuals identified in Counts 16–20. See id. at 10–11. The language of the Counts closely tracks the statute, and provides additional factual predicate for the allegations, setting forth the date and patient name corresponding to each Count. See United States v. Jasper-Barbary, No: 12-cr-60011-SCOLA, 2012 WL 12952703, at *2 (S.D. Fla. May 2, 2012) (denying motion to dismiss obstruction of justice count because the indictment included factual allegations such as the time, place, and other underlying facts of the alleged violation). Nevertheless, Hollington argues that the facts behind these allegations do not support obstruction, as the defense never withheld the patient files and the patients were undercover agents. (See Doc. 88).

If Hollington's factual contentions are true, the Court is skeptical of the ultimate success of Counts 16–20 at trial. However, regardless of the truth of Hollington's factual contentions, his arguments exceed the scope of the Court's consideration on a motion to dismiss. The Court is constrained to the superseding indictment alone and cannot consider facts outside of it. See United States v. Critzer, 951 F.2d 306, 307–08 (11th Cir. 1992) (reversing district court's dismissal of indictments because it improperly considered facts proffered by the government); United States v. Belcher, 927 F.2d 1182, 1185, 1188 (11th Cir. 1991) (reversing district court's dismissal of indictment and finding no "infirmity of law in the prosecution" of the case) (citation omitted); United States v. Torkington, 812 F.2d 1347, 1353–55 (11th Cir. 1987) ("[A] court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.").

Although Hollington cites several cases outside of the Eleventh Circuit where other courts have affirmed dismissals of indictments based on the consideration of undisputed evidence refuting the charges, that relief is not available in the Eleventh Circuit. See United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) ("Although the Sixth Circuit has found that Federal Rule of Criminal Procedure 12 provides a basis for granting a pre-trial motion to dismiss a criminal indictment, see [United States v. Levin, 973 F.2d 463, 469

6

(6th Cir. 1992)], <u>we, along with three other circuits, reject this view</u>.") (emphasis added)). The <u>Salman</u> court elaborated further:

> The district court's supervisory authority to dismiss indictments cannot be anchored to a kind of criminal summary judgment procedure. We recognize that our system of criminal procedure may result in legally meritless cases being sent to trial, but absent further legislative direction, it is not for the courts to filter which criminal cases may reach the trial stage by reviewing the proffered evidence in advance.

<u>Id.</u> at 1268–69. Because Hollington raises factual challenges to the sufficiency of Counts 16–20 that the Court cannot consider, his arguments fail at this time, but may be reasserted at the close of the Government's case under Federal Rule of Criminal Procedure 29. The motion is due to be denied.

### b. Hollington's Motion to Strike Indictment ¶ A.9 and Sixth Motion in Limine – Florida Statute § 458.331(j) (Doc. 123)

Hollington attacks the Government's references to Florida Administrative Code Rule 64B15-14.009 in the superseding indictment and its anticipated reference to Florida Statute § 458.331(j) at trial. (Doc. 123 at 4–6). First, the Court considers Hollington's request to strike ¶ A.9, which cites and relays the standards set out in Florida Administrative Code Rule 64B15-14.009. [1] Although Hollington cites no legal standard for striking the

---

[1] Florida Administrative Code Rule 64B15-14.009 was repealed on May 18, 2023.

paragraph, the Court construes the motion as requesting to strike it as surplusage.

Rule 7(d) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." "A motion to strike surplusage from an indictment should not be granted 'unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial. This is a most exacting standard.'" United States v. Brye, 318 F. App'x 878, 880 (11th Cir. 2009)[2] (quoting United States v. Awan, 966 F.2d 1415, 1426 (11th Cir. 1992)). "Therefore, it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language . . . ." Awan, 966 F.2d at 1426. The issue is whether the Hollington has met the exacting standard necessary to strike ¶ A.9.

Hollington convincingly argues that Florida Administrative Code Rule 64B15-14.009 is irrelevant to Hollington. The code provision sets out the standards for the Board of Osteopathic Medicine and osteopathic physicians in assessing opioid addicted patients. FLA. ADMIN. CODE R. 64B15-14.009(1)(a). In ¶ A.9 of the superseding indictment, the Government cites this code provision

---

[2] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

and sets forth "the standards for office-based opioid addiction treatment" listed therein. (Doc. 68 ¶ A.9). Hollington argues this code provision does not apply to him. (Doc. 123 at 4). He is correct. The Code section pertains only to osteopathic physicians, not medical doctors. FLA. ADMIN. CODE R. 64B15-14.009(1)(a). The superseding indictment alleged Hollington was a "Florida-licensed medical doctor." (Doc. 68 ¶ A.1). Further, the Government concedes[3] a different code section, Rule 64B8-9.013, governs medical doctors prescribing controlled substances for pain treatment. (Doc. 136 at 4).[4] Although the Government attempts to argue that Hollington's obligations under Rule 64B8-9.013 are similar enough to Rule 64B15-14.009, and that both physicians are regulated by the Department of Health, id. at 3–4, this argument actually supports Hollington's contention that Rule 64B15-14.009 does not apply to him and is irrelevant. This citation risks prejudice to Hollington, as it appears to bind him to an inapplicable regulation. Thus, under Rule 7(d), ¶ A.9 must be to be struck from the superseding indictment because it is "inflammatory and prejudicial."

---

[3] Although the Government contends that Florida Administrative Code Rule 64B15.009 addresses standards for "osteopathic physicians and other physicians," the Government does not identify where or how the code section applies to "other physicians." (Doc. 136 at 3).

[4] Indeed, if this code section is applicable to Hollington, it begs the question why the Government did not refer to this code section in the superseding indictment rather than Florida Administrative Code Rule 64B15-14.009.

Awan, 966 F.2d at 1426 (citing United States v. Huppert, 917 F.2d 507, 511 (11th Cir. 1990)).

The Court also considers Hollington's request to exclude any reference at trial to Florida Statute § 458.331(j). Section 458.331(j) sets out the following act as a ground for denying a license or disciplinary action of a physician: "Exercising influence within a patient-physician relationship for purposes of engaging a patient in sexual activity. A patient shall be presumed to be incapable of giving free, full, and informed consent to sexual activity with his or her physician." FLA. STAT. § 458.331(j). Hollington argues this statute is irrelevant to the charges brought against him for the unlawful distribution of controlled substances. (Doc. 123 at 5–9). The Government counters that the statute is relevant, as it intends to prove at trial that Hollington's alleged sexual activity with patients supports that he prescribed those patients drugs without a genuine medical purpose. (Doc. 136 at 8–9).

The Government prevails in demonstrating the relevance of the statute. As indicated by the Eleventh Circuit in United States v. Heaton, 59 F.4th 1226, 1243 (11th Cir. 2023), a medical board's administrative rules for prescribing medication, including rules against engaging in sexual relationships with patients, can bear on whether a physician's prescribing practices depart from the usual course of professional practice. The Government anticipates putting forth evidence at trial of Hollington's sexual relationships with patients to

support that he knowingly distributed controlled substance without a legitimate medical purpose. (Doc. 136 at 8–9). The purported evidence supports the elements that the Government must prove for its case. Therefore, the statute is relevant. Hollington's motion is due to be denied on this ground.

### c. Hollington's Amended Motion to Dismiss Counts 12–15 (Doc. 125)

In his final motion to dismiss, Hollington largely rehashes arguments raised in other motions and asserts one new one. (Doc. 125). The Court addresses Hollington's most recent challenge to the superseding indictment, claiming the Government has "admitted" that the patients identified in Counts 12–15 have a legitimate need for the prescriptions Hollington prescribed them, and therefore, the charges for unlawful distribution of controlled substances cannot survive. Id. at 5–20. In support, Hollington points to the Government's response to a different motion where it stated that Hollington operated an addiction clinic, "so it is reasonable to assume that most of his patients needed medication to help treat this disease of addiction." (See Docs. 117 at 2; 125 at 6 (emphasis omitted)). Hollington contends this statement concedes the patients "needed" the medication, so 21 U.S.C. § 841 cannot apply to Hollington's alleged actions. (Doc. 125 at 6–7).

But this misconstrues the Government's response. The Government argued (and still argues) that Hollington did not intend to prescribe the

medication for a legitimate medical purpose within the usual course of professional practice, regardless of whether the patients needed the medication. (Doc. 138 at 7–8). Put another way, if Hollington intended to prescribe the medication so he could receive sexual favors, he arguably did not intend to prescribe the medication for a legitimate medical purpose. Further, the Government disputes the facts underpinning whether the patients needed the prescriptions. Id. at 8.

Finally, even assuming arguendo Hollington is correct that the Government has admitted to or will present facts at trial undercutting its case, such grounds are not appropriate for dismissing an indictment. Salman, 378 F.3d at 1267–68. To make his point, Hollington again relies on facts outside of the indictment to attack its sufficiency, which is impermissible. Id. For example, Hollington refers to motions and affidavits filed by the Government (Doc. 125 at 5), patient charts, id. at 7–10, and the Government's purported admissions, id. at 5–10, 18; yet, none of these can be considered at this stage of the case. Sharpe, 438 F.3d at 1263. Further, Hollington's reliance on Ruan v. United States, 142 S.Ct. 2370, 213 L.Ed. 706 (2022) is unhelpful, as Ruan does not concern dismissal of an indictment but rather what the Government must prove

at trial for a charge brought under 21 U.S.C. § 841. (Doc. 125 at 18–20). Accordingly, Hollington's motion is due to be denied.[5]

### III.   MOTIONS IN LIMINE

#### a. Hollington's Third Motion in Limine (Doc. 61)

Hollington requests that the Court require the parties to use transcripts of "undercover conversations" prepared by the defense and preclude the Government from using a different set of transcripts. (Doc. 61 at 1). When five undercover agents visited the Sawgrass Health Clinic and engaged with Hollington and clinic staff, the agents recorded those visits. Id. The defense provided copies of the recordings to the Government, but the Government provided no transcripts of those recordings in return. Id. at 2. As a result, the defense ordered the transcripts of the recordings, which results in voluminous pages of transcripts. Id. at 3–4. Due to this expense and effort on behalf of the defense, Hollington makes his request "[s]hould the Government [o]ffer [d]uplicate [t]ranscripts." Id. at 4.

The Government never responded, so the motion is presumed to be unopposed. While it is true that both sides generally can admit their own transcripts of recorded conversations, because the motion here is unopposed, Hollington's motion is granted to the extent that the defense transcripts, which

---

[5] Hollington's Motion for Oral Argument on this motion is also denied as moot. (Doc. 143).

are prepared by an official court reporter, will be the only transcripts used by either party at trial. However, this does not constitute a ruling on the admissibility of any transcript or recording.

### b. Hollington's Motion to Use Patient Files and Charts (Doc. 87)

Hollington seeks to use "patient files and charts of Sawgrass Clinic" ("medical files") during trial, particularly the patients identified in Counts 12–15 of the superseding indictment. (Doc. 87 at 1–2). The Government opposes the motion to a certain extent. (Doc. 103). First, it contends that a court order is required under 42 C.F.R. § 2.66(c) for the medical files to be used at trial. Id. at 1–3. Second, it argues Hollington may only use certain portions of the medical files at trial, including "the types of prescriptions issued, any relevant notes[,] . . . the diagnosis associated with the prescriptions, and relevant information and notes recorded on the dates charges in Counts 12 through 15[.]" Id. at 3–4. In his reply, Hollington seemingly concedes that § 2.66 applies and therefore makes a request for use of the medical files under the statute. (Doc. 113 at 4 n.5). He also reasserts that he should be able to use the entire medical files of the patients at trial. Id. at 1–5.

The applicable regulation, 42 C.F.R. § 2.66(a)(1) states: "An order authorizing the disclosure or use of patient records to investigate or prosecute a part 2 program or the person holding the records . . . in connection with a

criminal or administrative matter may be applied for" as part of a criminal action. Both parties agree an order is required for use of the patient files at trial. (Docs. 103 at 1–3; 113 at 4 n.5). Subsection (c) of § 2.66 states an order must comply with the requirements of paragraphs (d) and (e) of 42 U.S.C. § 2.64. Paragraphs (d) and (e) of § 2.64 require a determination that good cause exists for the disclosure of the medical files and the content of the order must:

> Limit disclosure to those parts of the patient's record which are essential to fulfill the objective of the order; [l]imit disclosure to those persons whose need for information is the basis for the order; and [i]nclude such other measures as are necessary to limit disclosure for the protection of the patient, the physician-patient relationship and the treatment services; for example, sealing from public scrutiny the record of any proceeding for which disclosure of a patient's record has been ordered.

Further, § 2.66(d)(1) requires any order under the section to require the deletion of patient identifying information from any documents made available to the public.

Good cause exists for use of the medical files for the patients identified in Counts 12–15, as there is no other effective way to obtain the information relevant to the charges, and as the patient's medical files likely are essential to proving and refuting the charges for the unlawful distribution of controlled substances to them. § 2.64(d)(1). Further, the public interest and need for the files outweighs the potential injury to the patients, particularly as Hollington anticipates that the patients will testify at trial as to their relationship with

Hollington, their medical histories, and treatments. § 2.64(d)(2); Doc. 113 at 4–5. The issue then is what portions of the files may be disclosed at trial.

Hollington seeks to use the files in their entirety, whereas the Government requests a limited disclosure. (Docs. 103 at 3–4; 113 at 1, 4–5). Hollington argues this proposal constitutes cherry picking the files, as the "entire history" and "entire chart" of each patient is essential to Hollington's defenses. (Doc. 113 at 1–2) (emphasis omitted). The Court agrees that the entire medical files must be disclosed between the parties. However, to the extent that Hollington wants to utilize the medical files at trial, before any of the patient witnesses testify, Hollington and the Government must confer with the Court outside of the presence of the jury to determine what portions of the files are appropriate for examination. Additionally, the parties must delete all patient identifying information from any documents made available to the public. See § 2.66(d)(1). Accordingly, Hollington's request is granted, subject to these limitations.

### c. Government's Amended Notice of Intent to Introduce Evidence of Other Crimes, Wrongs, or Acts (Doc. 93)

The Government provided notice of its intent to introduce evidence of Hollington's uncharged crimes, wrongs, or acts. (Doc. 93). Specifically, it seeks admission of a memorandum of agreement (MOA) between Hollington and the Drug Enforcement Administration (DEA) dated August 14, 2020. Id. at 1–2.

16

Hollington opposes and requests that the Court exclude the MOA at trial. (Doc. 114 at 13).

The MOA describes multiple instances of Hollington misusing his prescribing power. (See Doc. 93-1). Specifically, the MOA states that from August 2015 through December 2016, Hollington issued more than 100 controlled substance prescriptions in Florida, improperly utilizing his Minnesota DEA registration. Id. at 1. He also self-prescribed Phentermine in Florida during this time. Id. In October 2016, Hollington met with Jacksonville Diversion Investigators and admitted to the self-prescription and other prescriptions utilizing his Minnesota DEA registration. Id. Later, in early December 2016, an investigator informed Hollington that he was prohibited from using his Minnesota DEA registration for controlled substance activity in Florida. Id. Then, from early December 2016 through March 2017, Hollington again issued more than 100 controlled substance prescriptions to patients in Florida using his Minnesota DEA registration. Id.

The DEA then subpoenaed Hollington for copies of four patient charts, which a medical expert reviewed and determined that all of the controlled substances prescriptions were invalid except for one. Id. at 1–2. The expert cited instances where the medical records were insufficient for such prescriptions and where Hollington prescribed non FDA-approved drugs for addiction treatment. Id. at 2. Hollington neither admitted nor denied these allegations concerning

his conduct. Id. As a result of these alleged incidents, the DEA and Hollington then entered into the MOA, which required, in part, Hollington to: (1) not prescribe benzodiazepines or opiates in combination with buprenorphine for 18 months; (2) maintain a list of patients related to the first requirement; (3) never prescribe or dispense any non FDA-approved Schedule III–V controlled substance for addiction treatment; and (4) disclose the restriction on future FDA registration renewal applications. Id. at 3.

Under Federal Rule of Evidence 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Court applies a three-part test to determine the admissibility of extrinsic 404(b) evidence:

> (1) the evidence must be relevant to an issue other than the defendant's character;
>
> (2) there must be sufficient proof so that the jury could find that the defendant committed the extrinsic act; and
>
> (3) the evidence must possess probative value that is not substantially outweighed by undue prejudice.

United States v. Barrington, 648 F.3d 1178, 1186 (11th Cir. 2011) (citation omitted); see also United States v. Beechum, 582 F.2d 898, 911–13 (5th Cir. 1978). As to the first part, the Government offers the MOA "as direct evidence

that [Hollington] knew he had previously operated outside the course of his professional practice, and that he subjectively knew certain prescriptions fell outside the scope of his prescribing authority or knew he was acting in an unauthorized manner." (Doc. 93 at 5). The Government also offers it "to show a lack of accident or absence of mistake as to the specific prescriptions issued by" Hollington as charged in the superseding indictment, including his alleged failure to maintain patient charts and records and the issuance of benzodiazepines and buprenorphine. Id. In fewer words, the Government argues the MOA is relevant to Hollington's knowledge and intent, along with an absence of mistake or accident.

However, before going further with the 404(b) analysis, Hollington initially argues the MOA is inadmissible under Rule 408(a) (Doc. 114 at 3–4), which directs that "[e]vidence of the settlement of a claim is not admissible 'either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction.'" United States v. Levinson, 504 F. App'x 824, 828 (11th Cir. 2013) (quoting FED. R. EVID. 408(a)). Yet, subsection (b) allows a court to admit such evidence for other purposes, including "proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." FED. R. EVID. 408(b); see United States v. King, 623 F. App'x 962, 966 (11th Cir. 2015) (holding that district court did not abuse its discretion in admitting an

administrative complaint and cease-and-desist order because the evidence was not offered to prove the complaint's allegations, but rather to show that the defendant continued to participate in the scheme even after learning it was fraudulent); <u>United States v. Gannaway</u>, 477 F. App'x 618, 622 (11th Cir. 2012) (holding district court committed no error in admitting evidence at a criminal trial of the defendant's statement that he would accept responsibility for civil violations); <u>United States v. Pendergraft</u>, 297 F.3d 1198, 1211 n.8 (11th Cir. 2002) (holding that admission of a videotape of settlement negotiations with the defendants did not violate Rule 408 because the videotape was offered to prove their cooperation, which is not "a purpose forbidden Rule 408"). Because the Government does not offer the MOA to prove the allegations in the MOA, but rather as evidence of Hollington's knowledge and intent to commit the crimes charged in this case, Rule 408(b) does not bar admission of the MOA. (<u>See</u> Doc. 93 at 5).

Returning to Rule 404(a), however, the MOA's admissibility rests on a judgment call. Although the MOA originated within the last five years and concerns Hollington's alleged prescribing practices in his role as a physician, it involves Hollington's use of an out-of-state license when prescribing medicine to in-state patients. (<u>See</u> Doc. 93-1). The use of an out-of-state license is not an issue here; instead, this case involves Hollington's alleged practices in prescribing substances for which there was no legitimate medical purpose in

20

the usual course of professional practice. (See e.g., Doc. 68 at 5–10). Although the prior acts need not be identical to be probative, the circumstances alleged in the MOA are somewhat attenuated to the alleged facts in the superseding indictment and potentially pose a danger of confusing the issues and misleading the jury. See Fed. R. Evid. 404(b)(3); Fed. R. Evid. 403; cf. United States v. Sterling, 738 F.3d 228, 238 (11th Cir. 2013) ("A prior crime need not be factually identical in order for it to be probative.") (citation omitted) (finding that a past conviction for possession with intent to distribute marijuana was sufficiently similar to the charge of possession with intent to distribute 500 grams of cocaine). (It potentially would be admissible on cross-examination if Hollington testifies.) Thus, the Court defers ruling on the admissibility of the MOA under Rule 404. Before the Government seeks its admission at trial, the Government must provide a proffer as to the MOA's relevancy and probative value to this case.

### d. Hollington's Fifth Motion in Limine (Doc. 118)

In Hollington's final motion, he seeks a prohibition against the Government identifying certain witnesses as "victims" at trial. (Doc. 118 at 1). The witnesses are patients with whom Hollington allegedly exchanged prescriptions for sexual favors. (Doc. 129 at 1). They are anticipated to testify in support of Counts 12–15. Id.

Hollington argues the "victim" label is improper because Hollington is not charged with a crime against a "victim," and that the Government concedes the parties were addicts who needed the prescriptions prescribed by Hollington. (Doc. 118 ¶¶ 3–11). The Government counters that the patients are victims under the Crime Victims' Rights Act (CVRA), codified at 18 U.S.C. § 3771, and cites the Florida Administrative Code and Florida Statutes to demonstrate that Hollington's alleged conduct was inappropriate. (Doc. 129 at 2–4).

The presumption of innocence is undermined when an improper statement "yields the danger of a continuing influence throughout the trial[.]" United States v. Flores, 572 F.3d 1254, 1262 (11th Cir. 2009) (citation and quotation marks omitted). "Short and nondescript" statements do not violate the presumption of innocence. Id. But a prosecutor must refrain from commenting on his or her personal views of a defendant's guilt, even though the prosecutor may urge the jury to reach a conclusion from the evidence. United States v. Sosa, 777 F.3d 1279, 1297 (11th Cir. 2015) (citation omitted).

In similar cases, courts have granted a defendant's motion in limine and prohibited the government from using the term "victim" to describe witnesses. See United States v. August, 590 F. Supp. 3d 972, 976–77 (W.D. Tex. 2022) ("In the present context, use of the term 'victim' creates an inference that Defendant has committed a crime. As a result, use of the term is likely to improperly color the jury's decision-making by creating an assumption that the Government has

already proved a core element of its case."); <u>United States v. Sena</u>, No. 19-CR-01432, 2021 WL 4129247, at *1 (D.N.M. Sept. 9, 2021) ("However, Mr. Sena is correct that the term is prejudicial when the core issue at trial is whether a crime has been committed—and, therefore, whether there is a victim."). Other courts have denied a defendant's motion but implemented other restrictions. <u>See</u> <u>e.g.</u>, <u>United States v. Williams</u>, No. 7:09-CR-8-001 (WLS), 2010 WL 11711094, at *2 (M.D. Ga. Dec. 13, 2010) ("First, the Parties are ORDERED to precede the words 'victim' or 'rape' with the word 'alleged' or some synonym thereof. Second, where the Court deems it necessary, the Court will issue an appropriate limiting instruction to the jury.").

Because Hollington is not charged with crimes against the patients, the Government's use of the term continually throughout trial risks unduly prejudicing Hollington. Accordingly, the Government may not refer to the patients as "victims" throughout the trial. However, upon request by the Government, the Court will consider whether it may use the term "victim" in its closing argument.

Accordingly, it is hereby

**ORDERED:**

1.      Hollington's Motion to Dismiss Counts 16–20 (Doc. 88) is **DENIED**.

2.      Hollington's Motion to Strike Indictment ¶ A.9 and Sixth Motion in Limine – Florida Statute § 458.331(j) (Doc. 123) is **GRANTED IN PART AND**

**DENIED IN PART**. Paragraph A.9 is struck from the superseding indictment. (Doc. 68).

3.     Hollington's Amended Motion to Dismiss Counts 12–15 (Doc. 125) is **DENIED**.

4.     Hollington's Motion for Oral Argument (Doc. 143) is **DENIED**.

5.     Hollington's Third Motion in Limine (Doc. 61) is **GRANTED**.

6.     Hollington's Motion to Use Patient Files and Charts (Doc. 87) is **GRANTED subject to the limitations identified herein**.

7.     As to the Government's Amended Notice of Intent to Introduce Evidence of Other Crimes, Wrongs, or Acts (Doc. 93), the Court **DEFERS** ruling on the admissibility of the Memorandum of Agreement until the Government seeks its admission outside the presence of the jury.

8.     Hollington's Fifth Motion in Limine (Doc. 118) is **GRANTED IN PART**. The Government may not refer to the patients as "victims" throughout trial but may seek permission to do so in closing argument.

9.     Hollington's Motion for Permission to Bring Electronics into Courtroom and Use Electronic Courtroom Presentation Equipment (Doc. 147) is **GRANTED**. In accordance with Local Rule 7.02(a)(2), Curtis S. Fallgatter and his staff are permitted to bring electronics into the courthouse during the trial in this case. Counsel shall contact the Courtroom Deputy should they wish to set up a time to test the courtroom electronic equipment ahead of the trial.

**DONE AND ORDERED** in Jacksonville, Florida this 3rd day of July, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

ksm
Copies:

Counsel of Record
U.S. Probation
U.S. Pretrial Services
U.S. Marshals Service
Defendant