UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No.: 3:22-cr-141-TJC-PDB

v.

SCOTT ANDREW HOLLINGTON,

Defendant

_____/

## SENTENCING MEMORANDUM
## AND
## INCORPORATED MEMORANDUM OF LAW

COMES NOW the Defendant, Scott Andrew Hollington, by and through his undersigned counsel, and hereby files this Sentencing Memorandum and Incorporated Memorandum of Law, and respectfully requests the Court depart downward from any adjusted offense level, and/or exercise its discretion to impose a sentence below that recommended by the advisory range, for, *inter alia*, the following reasons, and in support thereof, states as follows:

A.    Family Background, Health and Character Letters

1.    Birth and Immediate Family

Dr. Hollington was born on July 21, 1965, in Santa Barbara, California, to George and Margaret Hollington.  His father is deceased.

His mother, Margaret, is 86 years old, and resides in an assisted living facility, in Jacksonville, Florida. She suffers from dementia and is deaf. His mother also has debilitating osteoarthritis and is walker dependent. She has recently experienced chest pains that have not been diagnosed. Dr. Hollington is very close to his mother and has lunch with her every Monday. He also provides transportation to all her medical appointments.

Dr. Hollington has one brother, Steven Hollington, who is married and has two children. He lives in Tucson, Arizona and is employed with Honeywell, working in avionics. Due to his great distance from Jacksonville, this son cannot assist their mother, and thus those duties fall solely on Dr. Hollington.

Dr. Hollington married his wife, Jeanne, on July 5, 1991. They have two grown sons, Kevin and Brian. The Hollingtons reside in St. Augustine, Florida. Mrs. Hollington is a gifted artist and shows and sells her work, in an art gallery, in downtown St. Augustine.

Kevin Hollington is 31 years old and is permanently disabled. He suffered brain damage at birth and has been diagnosed with cerebral palsy and autism. He did not speak or walk until he was 7 years old. Kevin requires constant care and is unable to live on his own. Dr. and Mrs. Hollington provide for all of his daily living needs.

Brian Hollington is 30 years old and is married to his wife, Claire. They reside

2

in Minneapolis, Minnesota, where Brian is employed as an IT head hunter.

Attached as Composite Exhibit A are family photographs.

2.    Education

Dr. Hollington graduated from Highland High School, in Pocatello, Idaho, in 1983. He then attended and graduated from the University of Miami, in 1988, with Bachelor of Science degrees in biochemistry, chemistry, and a minor in math. Attached as Exhibit B are his undergraduate transcripts. As you can see, Dr. Hollington was a gifted student.

After graduation from the University of Miami, and while serving in the United States Air Force Reserve, he was accepted into the University of Miami Medical School, and graduated from medical school in 1992. Attached as Exhibit C is a copy of his medical school diploma. Following his graduation from medical school, Dr. Hollington was accepted into the Residency program for pathology, at the University of Florida. He completed that residency, in 1996. Attached as Exhibit D is his residency certificate of completion.

While in the Air Force, Dr. Hollington completed another fellowship, in anatomic pathology, at the Texas Wilford Hall United States Air Force Medical Center, which he attended from 1996 to 1997. Attached as Exhibit E is a letter from the Department of the Air Force confirming his fellowship.

3

3.      Military Service

After he received his bachelors degrees, in 1988, from the University of Miami,

Dr. Hollington received his commission into the United States Air Force Reserve

(Medical Services Corps), as a second lieutenant, on January 31, 1989.  A copy of his

military commission is attached as Exhibit F.  His initial military service consisted

of medical school, at the University of Miami, his residency, at the University of

Florida, and a residency, at Texas Wilford Hall United States Air Force Medical

Center.

Following his educational military station assignments, Dr. Hollington was

stationed at Wright Patterson Air Force Base, in Dayton, Ohio, from 1997 to 2000.

He served as the Director of Clinical Laboratory.  Dr. Hollington was honorably

discharged on June 30, 2000.  A copy of his DD-214 is attached as Exhibit G.

4.      Teaching and Certificates of Acceptance

From 1999 to 2001, Dr. Hollington was employed with Wright State University

as an Assistant Clinical Professor, in the pathology department.  Attached as Exhibit

H is a copy of his credential from Wright State University.  Dr. Hollington has also

been accepted into many prestigious pathology and medical examiner associations.

Attached as Composite Exhibit I are the certificates from the various associations.

5.    Employment

Following his honorable discharge from the United States Air Force, in 2000, Dr. Hollington was employed with Up to Date Medical Software, as a software developer, from 2000 until 2015.  In 2013, Dr. Hollington started his own medical software company, named High Powered Diagnosis.  He was also hired by the CDC, from 2013-2014, to standardize the information written, on paper, during site inspections of outbreaks.  Dr. Hollington developed the software to electronically track this important information.

From 2014 to 2016, Dr. Hollington worked as an addiction doctor for the Hazelton/Betty Ford Clinic.  This is where he developed a passion to help addicts get off street drugs.

Because of his passion to help addicts get off street drugs and to help them to be able to live a productive life, Dr. Hollington started Sawgrass Health, in St. Augustine, Florida, in 2016.  He operated this business until October 2022 (the date of his arrest).

Since his indictment in October 2022, Dr. Hollington was unable to obtain meaningful employment.  Of course, as the Court is aware, he has been in State custody since September 11, 2023, on a criminal charge out of Volusia County, in Volusia County Case No. 2023-304283CFDB (which is now resolved).

5

6.    Poor Health

Attached as Exhibit L are medical records for Dr. Hollington.  He has a number of serious health issues, in addition to his obesity (although, due to the lengthy state incarceration, he has now lost a great deal of weight).

Obesity – Dr. Hollington is 6' 2" and weighed 320 pounds.  His BMI was 40, which qualifies as morbidly obese.  That obesity, which, itself, is very dangerous, very much complicates his other conditions, which include hyperglycemia, diabetes, bladder dysfunction and osteoarthritis.

Hyperglycemia and diabetes – are related and serious conditions that cause chronic health complications, including heart and kidney damage, neurological deficits, blindness, and deafness.  Aside  from these chronic issues, which interfere with a his ability to cope with activities of daily living, there are serious and dangerous acute complications.   Hyperglycemia may cause seizure, loss of consciousness, coma and death.  Acute complications put a patient at high risk in dangerous situations, to the point that, one diabetic seizure would disqualify a person from driving.  With this condition, Dr. Hollington, a dangerous environment (such as prison) should be avoided.

Bladder dysfunction – is an uncommon condition that has no medical treatment, and puts a patient at high risk for kidney infection and subsequent kidney

6

failure, leading to death.  To decrease the risk of acute kidney failure, a patient with

bladder dysfunction is advised to regularly empty the bladder, taking time – at least

10 minutes, and reasonably up to 30 minutes – to carefully and completely empty the

bladder.  This exercise should be taken every 2-4 hours, and if not done, greatly

increases the risk of kidney failure.  A person with this condition (which Dr.

Hollington has) must have frequent regular access to bathroom facilities.  Even one

day without such access could cause serious damage.  As with the hyperglycemia and

diabetes, an uncontrolled environment (such as prison), without constant access to

bathroom facilities, should be avoided.

Osteoarthritis – significantly impacting a person's ability to perform activities

of daily living, and is considered a disability under the Americans with Disabilities

Act.  Dr Hollington's shoulders are catastrophically disabled, with disability in the

knees, ankles, distal upper extremities, and spine.  This puts him at risk for

ambulation, especially on stairs.  Because this disease may flare in severity, there are

times when he is at extreme risk.  With this condition, Dr. Hollington should avoid

an environment (such as prison) that would require ambulation.

7.    Character Letters

Attached a Composite Exhibit M are character letters from Dr. Hollington's

family and friends.

Margaret Hollington is Dr. Hollington's mother.  She is 86 years old, retired, and lives in the assisted living facility Fountains of Mill Cove, in Jacksonville, Florida.  She is recently widowed.  Her husband was diagnosed with dementia and passed in January 2022, she notes that the recent years have been very sad, lonely, and medically challenging.  Mrs. Hollington notes that, prior to his father's passing, Dr. Hollington was a provider during his (Dr. Hollington's father) decline – both emotionally and physically.  When given instructions by their doctor after the dementia diagnosis to relocate closer to one of their sons, Dr. Hollington immediately volunteered for them to move to Florida, to be closer to him.

Mrs. Hollington describes her son as a "hardworking man, devoted father, and family person."  She worries that this sentence could potentially harm the family he has cared and provided for, saying that their "financial welfare is in jeopardy without his ability to provide for them."

Regarding this charge, she states:

> I am aware of the charges for which Scott has been convicted and I am confident he was attempting to provide quality addiction advice and treatment for his patients.

(emphasis added).

William B. Van Riper III is a retired law enforcement officer who served the citizens of Miami-Dade County for nearly twenty-six years.  During his career, he

worked honorably as a deputy, sheriff, and police sergeant and has been called upon to give sworn, truthful testimonies for proceedings in both County and Circuit Criminal Courts in the State of Florida.  He has known Dr. Hollington since Dr. Hollington was a student at the University of Miami School of Medicine.  Their paths crossed when Dr. Hollington began dating Mr. Van Riper's sister, Jeanne, whom he later married.

He describes Dr. Hollington as a "very intelligent, focused individual with a high degree of both medical knowledge and general knowledge in a wide variety of disciplines."  He talks of how Dr. Hollington served as a medical officer in the U.S. Air Force, and also held trusted positions in a medical software company where he was principally involved in writing and coding.

He also knows the weight of concern Dr. Hollington has for treating chronic medical conditions and helping drug-addicted patients with their dependency to illegal drugs.  Mr. Van Riper highlights and applauds Dr. Hollington's dedication to serve and heal people in these positions, as well as provide for his own family.

In reference to this character trait, he states:

> I have known Dr. Hollington to be a devoted husband, father, and son.  He is primarily responsible, with support of his brother, for the care of his elderly widowed mother who is presently confined to a nursing home in St. Augustine.  He has provided a comfortable home for his family and supported his wife who is a professional artist.

9

(emphasis added).

Mr. Van Riper has seen the toll this trial has taken on Dr. Hollington. He believes this has been a humbling experience for Dr. Hollington. He explains how a custodial sentence would negatively affect Dr. Hollington's entire family.

Stephen Claypool is a physician at Juniper Health, in Minneapolis, Minnesota, who specializes in internal medicine and informatics. He is a colleague and friend of Dr. Hollington, since they worked together for several years at Wolters Kluwer Health. At this medical facility, Dr. Claypool served as Dr. Hollington's supervising physician, where he oversaw his work on medical software products. Through this experience of working together, they have built a strong bond. He describes Dr. Hollington as a "trustworthy and compassionate individual."

Regarding the charges, he states:

> I must admit that I do not have full knowledge of the specific details since our contact has reduced since his move to Florida. However, during a conversation last year when he visited Minnesota, we discussed his medical practice, and I gained insight into his genuine commitment to providing quality medical care, particularly addiction treatment, to his patients. He expressed his concerns about the lack of access to the medical system for many of his clients, and he sought to address not only addiction, but also other psychiatric conditions, especially depression, and other medical problems – he attempted a holistic approach to patient care to help his patients the best he could.

(emphasis added).

10

Dr. Claypool emphasizes that Dr. Hollington is not only dedicated to his
medical profession, but to his family and community as well.  He is impressed with
how Dr. Hollington raised his autistic son, despite all the hardships and challenges
thrown their way, and how he's been a "loving and caring" husband to his wife and
a responsible father for his son.  Dr. Claypool also highlights Dr. Hollington's work
as a former Boy Scout leader, where he offered friendship and support to young
individuals in need.

Dr. Claypool has witnessed this firsthand, and states:

> He brought a teenager with Asperger's under his wing, inviting
> him to gaming sessions because the teenager had few friends.
> Even after his relocation to Florida, he continued to invest his
> time in inviting friends of his younger son to his clinic,
> providing them with a unique opportunity to explore the field of
> medicine and empowering them to make informed career
> decisions.

Based on his personal experiences with Dr. Hollington, Dr. Claypool informs
you his actions were not out of malicious, intent or greed, but out of care and
dedication to help those in need.  He credits Dr. Hollington for his unwavering
commitment to his patients' well-being.

Wendy Frankton is an employee at Oasis Treatment Center, who works as an
evaluator and group facilitator.  She has worked in the addiction field for over nine
years and has seen family members pass from it.  Ms. Frankton is the parent of one

Case 3:22-cr-00141-TJC-PDB    Document 243    Filed 01/15/25    Page 12 of 27 PageID
3786

of Dr. Hollington's patients, Crystal Sanders, who has Autism. They met in 2021,

when she was referred to him by another doctor regarding Crystal's mental health.

She was very satisfied with her daughter's treatment and insists that she has never

met someone who takes the time to listen and understand her daughter's issues like

he did.

> She explains how one of their first appointments went:

>> Dr. Scott Hollington made some great recommendations for her,
>> and they connected right away which at the end of the
>> appointment he discussed how he is the caretaker to his son who
>> is Autistic as well. <u>My daughter left that appointment excited
>> that she was finally heard by someone in the medical field and
>> that he understood exactly what she was feeling.</u>  This is why I
>> returned to see him several times when he moved his office from
>> Ormond Beach to St. Augustine which is 80 miles from us in
>> Orange City.

(emphasis added).

While Ms. Frankton is aware of the charges, she is convinced Dr. Hollington

was attempting to provide quality addiction advice and treatments to his patients. She

emphasizes the fact that Dr. Hollington genuinely cares for and connects with his

patients. He even gave her his personal phone number, so she can call if there are any

emergencies or concerns, which she did several times – and he always answered. She

also knows of his situation at home, where he is the sole caretaker for his son and

provides for his wife and mother, and asks that you allow him to be able to continue

this role.

Ryan Murphy is an employee of the Department of Defense, who has been a patient of Dr. Hollington for four years now, receiving treatment for his Major Depressive Disorder, while battling a drug addiction.  He states that Dr. Hollington "conducts himself in a very professional manner."  When describing the medical facility, he says, "there is no other place that actually has a tapering over time protocol like the one he lays out."

After hearing on the radio that Dr. Hollington was arrested, Mr. Murphy  felt the urge to speak up on his behalf, and states:

> It's frustrating news to hear that he will no longer be seeing patients, my heart breaks for the hundreds of professional people who now will go through a tremendous stressor of not having a doctor to provide relief for the time being.

Wendy Peele is a retired doctor who practiced for 25 years at the University of North Florida, after serving 9 years as an Assistant Professor of Physical Therapy in the College of Medicine.  She has been Dr. Hollington's neighbor for the past three years and has become dear friends with his family.

Dr. Peele recalls a conversation she and Mr. Hollington shared:

> Dr. Scott Hollington and I have discussed on many occasions the difficulties in treating physically and mentally challenged patients due to trauma, addiction, and/or including impaired discernment.  <u>I cannot accept that he would knowingly misprescribe or willingly harm his patients.</u>

13

(emphasis added).

She has witnessed interactions between Dr. Hollington and his son, Kevin, where his son would have meltdowns or moments where Dr. Hollington worked to keep him calm to diffuse the situation and distract Kevin into a calmer state. She applauds the Hollington family and says they have "grace and kindness which have managed many difficulties with love and compassion."

She also emphasizes that Dr. Hollington's absence from his family's life would "endanger" Kevin's life and survivability. It would also affect his wife, Jeanne, and without him, their family would fall apart.

Abraham Kochba is 72 years old and lives with his family in St. Augustine, since his retirement in 2020. He has known Dr. Hollington and his family for 15 years, and describes him as a "great neighbor" who is "always pleasant, friendly, and respectful." He has also observed how devoted and dedicated he is to his family and his son. Throughout conversations with Dr. Hollington, he has come to learn that he is enthusiastic about his work and recognizes his life mission was to help people rather than profit from them.

Mr. Kochba is aware of the charges and states:

The allegations against Dr. Hollington are in complete contradiction to his compassion and character. I believe his intentions might have been misconstrued and I am confident he was always attempting to provide quality addiction advice and

treatment for his patients.

(emphasis added).

Mr. Kochba wants Dr. Hollington's lifelong work to help the community and his dedication to his family to be recognized.

Scott Poellinger worked with Dr. Hollington at a software startup company called Provation Medical, from 2001 to 2006, where he served as the company's Financial Controller. During those six years, they lived in the same suburb of Plymouth (outside of Minneapolis) and would carpool together. Because of this, they spent numerous hours together and got to know each other at a personal level rather than strictly professional.

During their time together, their families also interacted. Mr. Poellinger's children had developmental issues early in their lives, which were challenging to navigate, but Dr. Hollington offered his support and advice for the family since his son was also challenged.

Mr. Poellinger is aware of the charges and states:

> I recognize the significance of the offenses Dr. Hollington has been convicted of and his pending sentencing. While I cannot speak to Dr. Hollington's conduct within his clinic, I can say that in all of my interactions with him, he has been above board and contributed positively to the Twin Cities community. A good example of this would be his role as a Cub Scout den leader for both Kevin and his other son, Brian.

15

(emphasis added).

While he recognizes Dr. Hollington's convictions, based on his own personal experiences, he is confident that Dr. Hollington was well-intended, and trying to help his patients.

Jeanne Hollington is Dr. Hollington's wife of 32 years, and they have shared many years of love, trust, and care. She describes him as a "loving husband to me and a loving father to our two sons." The couple faced hardships with their children's behavioral problems and medical conditions, but she says that Dr. Hollington persevered and put his family first. Due to their son's high need for care, they relied solely on Dr. Hollington's income. Despite being the sole provider, he never made his wife give up on her dreams, and states:

> In recent years, I have been able to embark on my dream of being a professional fine art painter while Kevin continues to live with us needing around the clock supervision. Scott has taken on as many as 5 different jobs at once to maintain our mortgage and our lives in Saint Augustine.

(emphasis added).

Mrs. Hollington has supported her husband's efforts in addiction treatment, since she knew he could provide relief and support for the less fortunate in their area. She has observed the families he has helped heal, and the individuals who gained their sense of self and life back – all because of his treatment.

16

In reference to his treatment, she says:

> To my extensive knowledge, Scott has always been a caring and
> gifted physician who has sought the best treatments for his
> patients.  In his career, he worked diligently to stay current on
> medical literature and best practices.  <u>He has only ever spoken
> with concern and compassion about the addiction patients who
> sought his care.</u>

(emphasis added).

She asks for mercy and leniency in sentencing.

As you can imagine, given the role Dr. Hollington plays in their lives, any term incarceration of him will create a huge impact on the family.

B.    <u>PSI Comments and/or Objections</u>[1]

For the convenience of the Court (and to not require the Court to read the identical objections twice), Counsel will adopt the analysis and comments set forth in his October 6, 2023 letter to Ms. Irish Anderson (which adopted counsel's pre-draft PSI letter of August 10, 2023), as well as the November 8, 2024 Supplement (reporting the disposition of the state case), copies of which we understand will be attached to the final PSI – and will not repeat them in this Memorandum.

---

[1]  Counsel understands the <u>final</u> PSI is due to be published on or about January 30, 2025. Since that date falls rather close to the February 6, 2025 sentencing date, and given the length of this Sentencing Memorandum, and coupled with the expectation that the parties now agree on the offense level to be presented to the Court, counsel has determined it best to get this Memorandum filed, even without having received the final PSI.  However, if necessary, after the final PSI is published, counsel may file a short supplement, depending on the content of the final PSI.

The Parties are in agreement the approximate amount of amphetamine is around 8,030 milligrams, which translates into a Base Offense Level 14.

C.    <u>Departure Grounds</u>

Counsel respectfully suggests the following departure grounds:

1.    Family Ties and Responsibilities – USSG §5H1.6

His family very much needs him – especially their handicapped son, as well as his elderly mother. His 31-year-old son, Kevin Hollington, is disabled, and has cerebral palsy. He has birth related brain damage. He was unable to speak or walk until he was seven years old.

Dr. Hollington's mother is 85 years old. She has dementia, is deaf, and is suffering from chest pains. His mother also has debilitating osteoarthritis and is walker dependent. She has frequent medical appointments and does not drive. Dr. Hollington is primarily responsible for her transportation to medical appointments.

2.    Age – USSG §5H1.1

Dr. Hollington is 58 years old. As the Court has seen, he is very much overweight, and in general poor health.

3.    Physical condition – USSG §5H1.4

Part A.6., above, addresses the multiple serious health conditions afflicting Dr. Hollington, any one of which would be recognized under this Guideline section, but,

in combination, are all the more pronounced.

    4.    "Medical Condition of Defendant" – USSG §lBl.13

Although this provision normally deals with a reduction in a sentence, for obvious reasons, it is also relevant at the time of sentencing.

See Application Note 1(A)(ii) to U.S.S.G. §1B1.13 comment, which provides as follows:

> (ii)    The defendant is –
>     (I)    suffering from a serious physical or medical condition,
>     (II)    suffering from a serious functional or cognitive impairment, or
>     (Ill)    experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

Based on the health conditions recited in Part A.6, above, Dr. Hollington qualifies for consideration under this section.[2]

    5.    Military Service – USSG §5H1.11

---

[2] Specifically, the DOJ has concluded that certain risk factors identified by the Centers for Disease Policy Control and Prevention ("CDC"), which place individuals at higher risk of severe outcomes from COVID-19, can present an "extraordinary and compelling reason" for release under current COVID-19 conditions.  See, e.g., Doc. 49 (at pp. 8-9), in MDF Case No.: 3:17-cr-00224-MMH-MCR.  Moreover, in *U.S. v. Jepson*, 451 F. Supp 3d 241 (D. Conn., Apr. 1, 2020), the court "concludes that the Court may determine that 'extraordinary and compelling' reasons may exist beyond those delineated by the commentary to U.S.S.G. §1B1.13."  (emphasis added).

As stated above, Dr. Hollington faithfully served in the Air Force, for 12 years, from 1988-2000.

From 1988-1992, Dr. Hollington's duty station was the University of Miami School of Medicine. During that time, Dr. Hollington was sent on three transfers, for three months each, to obtain additional medical training.[3]

In 1992, Dr. Hollington's duty station changed to the University of Florida, where he began his residency program. He completed that residency program, in 1996. In 1996, Dr. Hollington's duty station changed to Wilford Hall Medical Center, San Antonio, Texas, where he served as a anatomic pathology fellow. He completed that fellowship program, in 1997. Dr. Hollington was then stationed at Wright Patterson Air Force Base, Dayton, Ohio, from 1997 to 2000.

After that dedicated service, he received an honorable discharge, on June 30, 2000, as confirmed by his DD214.

6.    Combination of two or more offender characteristics – USSG §5K2.0(c)

As this section notes, even where some departure grounds, standing alone, may not warrant a departure, in combination, they can.

---

[3] In 1989, he was transferred to Medina Air Force Base, in San Antonio, Texas, for officer training. In 1990, he was transferred to Travis Air Force Base, in Vacaville, California, where he received additional medical training, in pathology. In 1991, he was transferred to the University of Oregon VA Health Center for radiology training.

D.    Variance Grounds

Counsel respectfully suggests the following variance grounds:

1.    Departure grounds

This Part C lists a number of departure grounds.  Should any of them not fully qualify as grounds for departure, we respectfully ask that they be considered as grounds for variance.

2.    Criminal History

Dr. Hollington has no prior criminal history.

3.    Safety Valve

It is respectfully submitted that Dr. Hollington's eligibility for the Safety Valve is a strong factor supporting a departure or a variance.

A defendant is eligible for the Safety Valve, if he meets these criteria:

> Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1) – (5) set forth below:
>
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of sub-section (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category);

21

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.[4]

Clearly, Dr. Hollington meets all of these criteria.

Respectfully, if that criteria support abrogating a <u>statutory minimum sentence</u>, *a fortiori*, they support a variance for such a qualifying person.

4.      Education and Degree – Tremendous Penalty to Lose

As he is now a convicted felon, Dr. Hollington will lose his medical license – and all of the education and training he undertook to obtain it, over a period of some

---

[4] Dr. Hollington gave the government the patient files for <u>all</u> of the patients listed in the superseding indictment.

30 years, will also be lost.

That, in and of itself, is a very severe penalty.

5.    Amphetamine – Same as Meth?

The Guidelines now treat amphetamine the same as the very dangerous and addictive substance methamphetamine, which literally rots your teeth, and is one of the most dangerous street drugs in existence.

Respectfully, that is unfair – and is particular unfair in the context of <u>lawful</u> and <u>safe</u> prescriptions for Adderall.

The CDC reports that some <u>6 million children</u> are currently prescribed Adderall.  Thus, it is an absolutely safe medication, and does not warrant such a harsh Guideline treatment.

In short, these harsh guidelines, for a drug as safe as Adderall, overstate the seriousness of this offense – especially since the government admits their 5 fake patients presented themselves as addicts,[5] and KW (the Count 13 patient) most certainly needed her Adderall medicine.[6]

_____

[5]  Each of them so testified at trial, the recordings absolutely confirm they presented themselves as addicts, and, Mr. Mike, in his closing argument, conceded to the jury they so presented themselves.

[6]  KW made 20 visits to Sawgrass Clinic, during a 24 month period.  She received the <u>same</u> prescription – <u>each</u> time – including from the APRNs.

6.    Obstruction

Respectfully, if points are assigned for obstruction, as stated in our October 6, 2023 letter to Ms. Anderson (see our comments as to PSI ¶¶32 and 44), they would overstate the seriousness of that alleged conduct.

7.    Role

Respectfully, if points are assigned for Dr. Hollington's "role" as a physician, as stated in our October 6, 2023 letter to Ms. Anderson (see our comments as to PSI ¶43), they would overstate the seriousness of that alleged conduct.

8.    State Incarceration

This was a joint state-federal investigation, which led to the September 11, 2023 arrest of Dr. Hollington, where he has remained in the Volusia County Jail (and now state prison), on no bond.  It was a life felony case, but was dropped, in a dramatic fashion, to just a third degree felony (the lowest level of felony in Florida).

Respectfully, given his 16-month "no bond" status in Volusia County, coupled with his three-year prison sentence ( imposed on October 28, 2024 – Exhibit N), it makes little practical sense to impose a federal incarceration sentence – even if the ultimate calculation of the Sentencing Guidelines by the Court were to yield exposure to such a sentence.

There is little need for federal resources to be consumed, when such a

significant exposure and current incarceration has been implemented in Volusia County.  That is all the more so, given the fact that Dr. Hollington has remained in custody, in a very poor county jail, the entire time.

As we have often noted, incarceration in a county jail surely translates into a federal sentence that is double or triple that time, due to the disparate conditions.

In short, Dr. Hollington's harsh conditions in state custody warrant a significant variance, and a non-incarceration sentence – or, perhaps more accurately, a concurrent sentence.

More importantly, as demonstrated in Exhibit O, any federal sentence can be designated to run not only (1) <u>concurrently</u> with the state sentence, but (2) the <u>state prison</u> can also be designated as the <u>place of service of the federal sentence</u>.  Indeed, give the ruling of the State court that the three-year sentence is directed to run "concurrent" with any other active sentence (Exhibit N at 6), it is all the more appropriate to invoke the authority set forth in the Bureau of Prisons Memorandum.

WHEREFORE, it is respectfully requested that this Court impose a probation-type sentence (including possibly home detention), or, alternatively, impose a sentence to run concurrently with the pending State sentence, and, further, direct that said federal sentence be served in the State facilities.

Respectfully submitted,

**FALLGATTER CATLIN & VARON, P.A.**

    /s/ Curtis S. Fallgatter
Curtis S. Fallgatter, Esq.
Florida Bar Number:  0213225
200 East Forsyth Street
Jacksonville, Florida 32202
(904) 353-5800 Telephone
(904) 353-5801 Facsimile
fallgatterlaw@fallgatterlaw.com Email
Attorneys for Defendant

Exhibits

A.    Family Photographs
    1.    Scott, parents George and Margaret and son Kevin, at Brooksdale Assisted Living – December 31, 2018
    2.    Scott, wife Jeanne and dog Stella – March 20, 2022
    3.    Scott, wife Jeanne and son Kevin – Ponte Vedra Beach – May 14, 2021
    4.    Scott, wife, and his parents George and Margaret (father deceased February 2022) and son Kevin – St. Augustine 2019
    5.    Scott, wife Jeanne, sons Kevin and Brian and daughter-in-law Claire – wedding in Minneapolis – September 9, 2022
B.    College Transcript – University of Miami
C.    Medical School Diploma – University of Miami
D.    Residency Certificate – University of Florida
E.    Fellowship confirmation letter – Wilford Hall United States Air Force Medical Center
F.    Military Commission
G.    DD214
H.    Teaching credential – Wright State University
I.    Certificates for pathology associations
    1.    National Board of Medical Examiners – Diplomat
    2.    The American Board of Pathology – Qualified for practice of Anatomic Pathology and Clinical Pathology
    3.    American Society of Clinical Pathologists – Resident
    4.    The American Board of Pathology – Diplomat – Pathology – Clinical Informatics

J.      Drug Count / Weight Schedule
K.      Adderall – Official description of ingredients
L.      Medical Records – Dr. Hollington
M.      Character letters (Margaret Hollington, William Van Riper, III, Stephen
        Claypool, Wendy Frankton, Ryan Murphy, Wendy Peele, Abraham Kochba,
        Scott Poellinger, and Jeanne Hollington)
N.      Judgment and Sentence (10/28/24) – filed in Volusia County Case No. 2023-
        304283CFDB
O.      Federal Bureau of Prisons Regional Counsel Memorandum:  "Interaction of
        Federal and State Sentences When Defendant is Under State Primary
        Jurisdiction"

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing and exhibits hereto have been furnished electronically to:  (1) Kirwinn Mike, Esq., Assistant United States Attorney, (2) Ashley Washington, Esq., Assistant United States Attorney, Office of the United States Attorney, 300 North Hogan St., Ste. 700, Jacksonville, FL 32202 (kirwinn.mike@usdoj.gov and ashley.washington2@usdoj.gov), and (3) Ms. Irish Anderson, Senior Probation Officer, United States Probation Office (irish_anderson@flmp.uscourts.gov), this 15th day of January, 2025.

 /s/ Curtis S. Fallgatter
ATTORNEY

140866(7)

27