**FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-11171
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

SCOTT ANDREW HOLLINGTON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:22-cr-00141-TJC-PDB-1

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and BRASHER, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether sufficient evidence supports a physician's convictions for unlawfully prescribing controlled substances and for obstruction of justice and whether

his sentence is reasonable. Scott Hollington ran an addiction clinic.
A jury convicted him of unlawfully prescribing controlled sub-
stances to five undercover officers and four real patients. It also
convicted him of obstruction of justice because he altered patient
records after his indictment. The district court sentenced him to
144 months of imprisonment, an upward variance from the guide-
line range of 30 to 37 months to account for sexual misconduct
Hollington committed against his patients. We affirm.

## I. BACKGROUND

On March 23, 2023, a grand jury returned a superseding in-
dictment charging Scott Hollington with 14 counts of unlawfully
distributing and dispensing controlled substances, one count of
conspiracy to commit that offense, and five counts of obstruction
of justice. The indictment alleged that Hollington prescribed con-
trolled substances "not for a legitimate medical purpose in the
usual course of professional practice" to five undercover officers
and four patients. It also alleged that Hollington altered the under-
cover officers' medical records after his indictment. Hollington
pleaded not guilty.

At trial, the four patients testified. The first patient, A.N.B.,
testified that she visited Hollington's clinic to obtain treatment for
her heroin addiction. After a cursory evaluation, he prescribed her
buprenorphine. When it came time to refill the prescription,
A.N.B. told Hollington she could not afford to pay for an office visit
or the prescription. Hollington told her "not to worry" and directed
her to sit next to him on a couch. He then told her "how pretty

[she] was," "started rubbing his hand through [her] hair and down [her] back," and said that she "would be able to pay for [her] prescriptions . . . if [she] just let him taste [her]." A.N.B. allowed Hollington to perform oral sex on her in exchange for the prescriptions and $300.

Another patient, E.L.M., testified that she visited Hollington to continue her Suboxone prescription. After noting that E.L.M.'s medical records showed that she had previously been prescribed Xanax, Hollington remarked, "we don't really do Xanax here in this office, but maybe we can work out a deal." He then asked her if he could perform oral sex on her, and when she declined, he forcibly removed her pants and sexually assaulted her. After E.L.M. left, Hollington wrote her several prescriptions.

Patient D.A. testified that she visited Hollington for pain management. Hollington prescribed her Subutex and benzodiazepine for about a year. D.A. was later incarcerated, and upon release, she returned to Hollington to renew her prescriptions. She told him she could not afford her prescriptions, and Hollington told her not "to worry about payment," commented on her appearance, and proposed meeting outside the office. Soon after, he paid for a hotel room for D.A. and performed oral sex on her there.

Finally, patient K.W. testified that she began visiting Hollington to obtain an Adderall prescription. At her appointment, he asked her questions about her previous heroin addiction, including how she "support[ed] [her] habit" and whether she "had a sugar

daddy." Hollington then wrote a script for Adderall without reviewing the medical records K.W. had brought to the appointment, conducting a physical examination, or taking her vitals. K.W. also told him she could not sleep without ZzzQuil and that she had been diagnosed with insomnia but not treated for it. Hollington prescribed her Ambien. For the next two years, K.W. saw a nurse practitioner at the clinic. But one time, she encountered Hollington. He "asked if he could see [her] bathing suit under [her] sundress" and "told [her] about him losing his virginity." She declined his overtures, and Hollington never engaged in any sexual contact with her.

The five undercover officers testified to obtaining prescriptions from Hollington or his staff after minimal or no medical evaluation. The prosecution introduced undercover video footage corroborating the officers' testimony.

The prosecution also introduced evidence that Hollington added entries to the officers' medical charts following his initial indictment. On November 4, 2022—a week after his initial indictment—Hollington called the officer who posed as "Kevin Lee" and asked a series of medical questions he did not previously ask before issuing Lee's prescriptions. Hollington told Lee to answer truthfully, and he recorded Lee's answers in his chart that same day.

On November 16, 2022, Hollington added entries to the other four undercover officers' medical charts. These entries stated that the officers had "falsely" told Hollington they had various symptoms and medical conditions. But the officers testified that

they never told Hollington they had any of the conditions he recorded in their charts.

Hollington moved for a judgment of acquittal. *See* FED. R. CRIM. P. 29. The district court granted the motion only as to the conspiracy count. The jury convicted Hollington on the remaining 19 counts.

A probation officer prepared a presentence investigation report, which calculated a guideline imprisonment range of 30 to 37 months. It applied a total offense level of 18, which included two-point adjustments for abuse of a position of trust and obstruction of justice. *See* United States Sentencing Guidelines Manual §§ 3B1.3, 3C1.1 (Nov. 2024). And it applied a criminal history category of II, based on a state sexual battery conviction Hollington received during the pendency of his federal case. Hollington contested the enhancement for abuse of his position because his charges for unlawfully prescribing controlled substances presupposed his status as a doctor.

At the sentencing hearing, the district court overruled Hollington's objections and adopted the guideline range of 30 to 37 months. The government requested a 37-month sentence to run consecutively to Hollington's three-year state sentence. It submitted written victim impact statements from D.A. and E.L.M. and statements from two more victims who did not testify at trial. One of the non-testifying victims wrote that Hollington sexually assaulted her during an appointment. The other wrote that Hollington had "molest[ed]" her.

Hollington requested a below-guideline sentence. His ex-wife testified that his incarceration would negatively impact their disabled son. Hollington read an allocution statement in which he denied trading "money for drugs, drugs for money, money for sex, sex for money, drugs for sex, or sex for drugs." He maintained his innocence and stated he had "been failed by the system." But he said that "[h]aving been convicted, I accept that I have done wrong." Hollington's counsel acknowledged that "[t]he allegations of sex are . . . reprehensible," but he argued that they were "separate from" his charges of unlawfully prescribing controlled substances.

The district court remarked that it "didn't hear a word of remorse" during Hollington's allocution. It explained that it was "surprised the guidelines were as low as they were" and noted that "the drug counts don't really take into account the terrible conduct of Mr. Hollington towards these women patients." It stated that it was not "apparent" that a 37-month sentence would be sufficient under the sentencing factors. *See* 18 U.S.C. § 3553(a). The district court gave Hollington notice that it was considering an upward variance. It then adjourned the sentencing hearing and scheduled a second sentencing hearing. At the second sentencing hearing, Hollington gave a statement expressing remorse. Nevertheless, the district court sentenced Hollington to 144 months of imprisonment, to run consecutively to his three-year state sentence. It explained that the guideline range was inadequate because it was "driv[en by] the . . . quantity of the drugs" and "ha[d] very little to do with" Hollington's sexual misconduct.

## II. STANDARDS OF REVIEW

"We review the sufficiency of evidence to support a conviction *de novo,* viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007). We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 56 (2007).

## III. DISCUSSION

We divide this discussion into three parts. First, we explain that sufficient evidence supports Hollington's convictions for unlawfully prescribing controlled substances. Second, we explain that sufficient evidence supports his convictions for obstruction of justice. Finally, we explain that Hollington's sentence is reasonable.

*A. Sufficient Evidence Supports Hollington's Convictions for Unlawfully Prescribing Controlled Substances.*

Hollington challenges the sufficiency of the evidence for his convictions of unlawfully prescribing controlled substances to A.N.B., D.A., and K.W. He does not challenge his convictions as to E.L.M. or the undercover officers. We must sustain the jury's verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Grzybowicz*, 747 F.3d 1296, 1304 (11th Cir. 2014) (citation modified).

It is "unlawful for any person knowingly or intentionally . . . to . . . distribute[] or dispense[] . . . a controlled substance" unless "authorized by" a statutory exception. 21 U.S.C. § 841(a)(1). One exception allows "practitioner[s]" to issue "prescription[s]" for controlled substances, *id.* § 829(a)–(b), "for a legitimate medical purpose . . . in the usual course of . . . professional practice." 21 C.F.R. § 1306.04(a). A doctor violates section 841 if he knowingly or intentionally "prescribes controlled substances either (1) for no legitimate medical purpose *or* (2) outside the usual course of professional practice." *United States v. Heaton*, 59 F.4th 1226, 1239 (11th Cir. 2023); *see also Ruan v. United States*, 142 S. Ct. 2370, 2375 (2022).

The prosecution provided sufficient evidence that Hollington unlawfully prescribed A.N.B. buprenorphine. Hollington concedes that A.N.B. "engaged in consensual, albeit coerced, sexual activity with [him] in exchange for prescriptions and money." We held in *Heaton* that a physician's prescribing of controlled substances to a patient with whom he had a sexual relationship "fell outside the usual course of professional practice." 59 F.4th at 1243. Hollington contends that *Heaton* is distinguishable because a state medical board previously warned the convicted physician that he was "prohibit[ed] . . . from having sexual relationships with . . . patients." *Id.* at 1232. By contrast, Hollington argues, the prosecution did not prove he knew his conduct fell outside the usual course of professional practice. But "[j]urors are entitled—indeed, expected—to make inferences based on common sense." *United States v. Caldwell*, 81 F.4th 1160, 1176 (11th Cir. 2023). And it is common

25-11171                Opinion of the Court                9

sense that "exchang[ing] [sex] for prescriptions" is not professional behavior.

Sufficient evidence also supports Hollington's conviction as to D.A. Hollington contends that there was insufficient evidence he traded prescriptions for sex because he wrote the scripts "several days before h[is] sexual encounter" with D.A. But a reasonable jury could infer that Hollington wrote the prescriptions in anticipation of obtaining sex in return.

Finally, sufficient evidence supports Hollington's conviction as to K.W. The jury found that Hollington unlawfully prescribed K.W. both amphetamine and zolpidem-tartrate, either of which can independently support the conviction. *See* 21 U.S.C. § 841(a)(1). But Hollington challenged only the finding that he unlawfully prescribed zolpidem-tartrate, so he forfeited any challenge to the jury's amphetamine finding. *See United States v. Morel*, 63 F.4th 913, 919 (11th Cir. 2023). And any error as to the zolpidem-tartrate finding was harmless because the district court sentenced Hollington only for distributing amphetamine, which carries a longer sentence than unlawful distribution of zolpidem-tartrate. *See* 21 C.F.R. §§ 1308.12(d)(1), 1308.14(c)(58) (classifying amphetamine as schedule II and zolpidem-tartrate as schedule IV controlled substances); 21 U.S.C. §§ 841(b)(1)(C), (b)(2) (providing, absent aggravating factors, a 20-year maximum sentence for schedule II violations and a 5-year maximum for schedule IV).

Forfeiture aside, the prosecution proved that Hollington unlawfully prescribed amphetamine to K.W. She testified that Hollington prescribed her amphetamine without reviewing the medical records she provided and without checking her vital signs or performing any physical assessment. She also testified that other doctors refused to prescribe Adderall to her because of the other medications that she took. The prosecution offered expert testimony that a doctor should perform a drug screen, check a patient's blood pressure and pulse, and review a patient's medical records before prescribing that drug. Because Hollington prescribed K.W. amphetamine without taking those steps when other doctors would not prescribe it at all, a reasonable jury could find that he did so outside the usual course of professional practice.

### B. Sufficient Evidence Supports Hollington's Obstruction Convictions.

Hollington also challenges his convictions for obstruction of justice. A person commits obstruction of justice if he "corruptly . . . endeavors to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503(a). To prove obstruction, "the government must [establish] that the defendant knowingly and intentionally undertook an action from which an obstruction of justice was a reasonably foreseeable result." *United States v. Thomas*, 916 F.2d 647, 651 (11th Cir. 1990).

Sufficient evidence supports Hollington's obstruction convictions. Hollington made the entries in the undercover officers' medical charts soon after his indictment, and he could have reasonably foreseen that these records would be evidence at his trial. *See*

*United States v. Aguilar*, 515 U.S. 593, 599 (1995) (requiring that the defendant have "knowledge that his actions are likely to affect [a] judicial proceeding"). In four charts, Hollington added false entries that the officers previously reported various conditions they never reported having. In the fifth, he accurately recounted the information Lee told him over the phone after the indictment. But the entry did not say *when* Lee provided that information and could imply that Hollington's screening preceded his prescription when it did not. The jury could infer Hollington modified the medical charts to serve as evidence that he conducted more thorough evaluations of those patients than he performed in person.

### C. *The District Court Imposed a Reasonable Sentence.*

We employ a two-step framework to review the reasonableness of a sentence. First, we consider "whether the district court committed any significant procedural error, such as miscalculating the advisory guideline[] range, treating the guidelines as mandatory, failing to consider the [section] 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). Second, we consider "whether the sentence is substantively unreasonable under the totality of the circumstances and in [the] light of the [section] 3553(a) factors." *Id.* "[W]e are to vacate the sentence if, but only if, we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the [section] 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated

12                     Opinion of the Court                    25-11171

by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190
(11th Cir. 2010) (en banc) (citation modified). Hollington has not
established either procedural or substantive error.

> 1. The District Court Did Not Procedurally Err.

Hollington argues that his sentence "rest[s] . . . on factually
unsupported findings." *See Cubero*, 754 F.3d at 892 (explaining that
a district court procedurally errs by "selecting a sentence based on
clearly erroneous facts"). He contends the district court misunder-
stood the basis for his conviction when it remarked that Holling-
ton's unlawful conduct was "the prescribing of [drugs] not for a le-
gitimate medical purpose." Yet several of Hollington's convictions
were indeed for prescribing drugs not for a legitimate medical pur-
pose. And even if the district court misspoke, it made clear that
Hollington's sexual misconduct drove his above-guideline sen-
tence, not the theory of how he unlawfully prescribed controlled
substances.

Hollington also contends that the district court erroneously
said that he sexually assaulted "victims"—plural—when only one
victim, E.L.M., testified at trial that Hollington sexually assaulted
her. But the district court was entitled to credit the statements of
the two non-testifying victims whom Hollington sexually as-
saulted. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the
information concerning the . . . conduct of a person convicted of
an offense which a court . . . may receive and consider for the pur-
pose of imposing an appropriate sentence."); *United States v. Over-
street*, 713 F.3d 627, 636–38 (11th Cir. 2013) (affirming consideration

of uncharged criminal conduct as part of the section 3553(a) analysis).

Hollington also contends that "the vast increase" in his sentence beyond the advisory range "is not supported by sufficient justification." *See* 18 U.S.C. § 3553(c) (requiring district court to state "the reasons for its imposition of the particular sentence"); *see also Cubero*, 754 F.3d at 892 (explaining that a district court procedurally errs by "failing to adequately explain the chosen sentence"). Yet the district court explained that an upward variance was necessary because the advisory range was driven by the quantity of drugs Hollington prescribed and did not account for his sexual misconduct. That explanation was sufficient. *See United States v. Steiger*, 99 F.4th 1316, 1322 (11th Cir. 2024) (en banc) (explaining that "it isn't onerous to comply with [s]ection 3553(c)"); *United States v. Nilsen*, 967 F.2d 539, 545–46 (11th Cir. 1992) (holding that district court provided sufficient explanation for above-guideline sentence by stating that the guideline range "did not adequately reflect the seriousness of [the defendant's] criminal history").

2. Hollington's Sentence Is Substantively Reasonable.

The district court did not abuse its discretion in sentencing Hollington to 144 months of imprisonment. It explained that Hollington's conduct was severe because he abused his status as a doctor to harm vulnerable patients. *See* 18 U.S.C. § 3553(a)(2)(A). Although the guidelines provided an enhancement for that abuse, U.S.S.G. § 3B1.3, the district court reasonably concluded that the enhancement was not sufficiently "significant." It also explained

that a severe sentence was necessary to protect the public because it could not "rule out" that Hollington was a "predator[]" who might assault other people.

Hollington contends that his sentence is unreasonable because two other physicians who unlawfully prescribed controlled substances to patients with whom they had sexual relationships received lesser sentences. *See Heaton*, 59 F.4th at 1238 (72-month sentence); *United States v. Shaker*, 827 F. App'x 204, 206 (3d Cir. Sep. 24, 2020) (41-month sentence). Under section 3553(a), district courts shall consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But "there can be no 'unwarranted' sentencing disparities among []defendants who are not similarly situated." *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015). Hollington is not similarly situated to the defendants in *Heaton* and *Shaker* because neither defendant committed sexual assault.

Hollington also contends that his sentence is excessive in the light of his three-year state sentence for sexual battery. But precedent forecloses that argument. Section 3553(a)(6) aims to avoid "unwarranted sentence disparities among federal defendants who are similarly situated instead of disparate federal and state sentences." *United States v. Docampo*, 573 F.3d 1091, 1102 (11th Cir. 2009).

Finally, Hollington argues that his sentence is unreasonable because the government did not request an upward variance. But

it "is well settled" that "the sentencing court is not bound by the parties' . . . recommendations." *United States v. Johnson*, 132 F.3d 628, 630 (11th Cir. 1998). The district court did not err by "exercising [its] own legal decisionmaking authority" to fashion an appropriate sentence. *Rita v. United States*, 551 U.S. 338, 356 (2007).

To be sure, Hollington's 144-month sentence represents a substantial upward variance from his guideline range of 30 to 37 months. But we routinely affirm significant upward variances. *See, e.g.*, *United States v. Turner*, 474 F.3d 1265, 1274, 1281 (11th Cir. 2007) (affirming 240-month sentence where guideline range was 51 to 63 months); *United States v. Osorio-Moreno*, 814 F.3d 1282, 1284 (11th Cir. 2016) (affirming 120-month sentence where guideline range was 51 to 63 months). And Hollington's sentence falls well below the statutory maximum term of 20 years. *See* 21 U.S.C. § 841(b)(1)(C); *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014) ("A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence."). We cannot say we are left with a "definite and firm conviction that the district court committed a clear error of judgment." *Irey*, 612 F.3d at 1190 (citation modified).

## IV. CONCLUSION

We **AFFIRM** Hollington's convictions and sentence.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 11, 2026

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  25-11171-JJ
Case Style:  USA v. Scott Hollington
District Court Docket No:  3:22-cr-00141-TJC-PDB-1

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. The Court has proposed amending 11th Cir. R. 40-1 (Number of Copies) to no longer require paper copies of a petition for panel rehearing or a petition for rehearing en banc. Based on the proposed amendment, other than an original petition filed in paper by a non-electronic filer, **parties are asked not to submit any paper copies** of a petition for panel rehearing or a petition for rehearing en banc.

Costs
No costs are taxed.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion